PRESENT: All the Justices

THOMAS HENDERSON

OPINION BY
v.      Record No. 120463      JUSTICE S. BERNARD GOODWYN
April 18, 2013

AYRES & HARTNETT, P.C.


FROM THE CIRCUIT COURT OF NORTHAMPTON COUNTY
Glen A. Tyler, Judge

In this appeal, we consider whether the circuit court erred in ordering Thomas Henderson to pay $130,000 to his attorney from proceeds deposited with the circuit court pursuant to a settlement agreement, and whether the circuit court erred in denying Thomas Henderson a jury trial on the attorney's fee issue. We also consider whether the circuit court erred in refusing to allow an appeal bond pursuant to Code § 8.01-676.1(C), which would have suspended execution of its award.

Background

Thomas Henderson (Henderson) retained Ayres & Hartnett, P.C. as his counsel in two cases filed against Henderson by his brother, James Henderson, in the Circuit Court of Northampton County. James Henderson filed two accounting actions against Henderson, one in Henderson's capacity as executor of the Estate of Edmund Henderson and trustee of Edmund Henderson's trusts and as attorney-in-fact under a power of attorney for Edmund Henderson, and the other in his capacity as executor of

the Estate of Mary M. Henderson and trustee of Mary M. Henderson's trusts. James Henderson also asserted breach of fiduciary duty claims against Henderson.

The circuit court appointed an administrator c.t.a. who oversaw an accounting of the assets in the trusts and estates, and the distribution of the estates' property. The administrator analyzed forensic accounting reports, bank records, and explanations of transfers, and submitted a report to the circuit court.

The parties engaged in settlement discussions after the administrator submitted his report and reached an agreement on the eve of trial. As part of the settlement, it was agreed that Henderson would sell the decedents' former real property known as Wellington, allowing Henderson's siblings, Elizabeth Long and James Henderson, to recover the funds Henderson was deemed to owe them because of his breach of fiduciary duties and defalcations. The circuit court, by order approving the settlement and pursuant to the express terms of the settlement agreement, retained jurisdiction over the cases pending satisfaction of the settlement's terms.

A buyer entered into a contract to purchase Wellington. At closing, the HUD-1 statement (HUD-1) specified a seller's expense of $130,000 in attorney's fees to Ayres & Harnett to be paid out of Henderson's share of the sale proceeds. Henderson

2

refused to finalize the sale of the property because he disputed the inclusion and amount of the attorney's fees to his counsel in the HUD-1.

Rather than jeopardize the sale of the property, all parties agreed to go forward with the closing and to pay certain proceeds from the sale, as reflected on the HUD-1, into the court for future distribution as directed by the court. After the proceeds were paid into court, the circuit court allowed any party that contested disbursement of the retained funds, in accordance with the original HUD-1, to object in writing. Henderson objected to the payment of Ayres & Hartnett's fees out of the sale proceeds. The circuit court, therefore, without objection, distributed the remaining proceeds from the sale of Wellington, except Ayres & Hartnett's disputed attorney's fees.

Henderson retained new counsel and requested a jury trial on the attorney's fees dispute. The circuit court denied the jury trial request and tried the matter without a jury, allowing the parties to present evidence on the propriety of the attorney's fees.

The circuit court found that Ayres & Hartnett's fees were reasonable and ordered distribution of the $130,000 in sales proceeds held by the court to Ayres & Hartnett. Henderson moved for the suspension of the execution of the award pending

appeal.  The circuit court denied Henderson's motion and ordered the immediate distribution of the attorney's fees to Ayres & Hartnett on the day of its ruling.

This Court granted an appeal on the following assignments of error:

> 1.   The Trial Court erred in awarding a judgment in favor of Ayres & Hartnett, P.C. in the amount of $130,000.
>
> 2.   The Trial Court erred in overruling the request of the Appellant for trial by jury on the issue of attorney fees to be awarded to his own attorney.
>
> 3.   The Trial Court erred in determining that it had jurisdiction to determine that the Appellant was indebted to Hartnett and in what amount.
>
> 4.   The Trial Court erred in failing to order that the Appellant's share of the settlement funds be paid to him without any deduction for attorney fees to be paid to his own attorney.
>
> 5.   The Trial Court erred in refusing to suspend execution of the judgment order in accordance with Section 8.01-676.1 of the Code of Virginia.

Analysis

Henderson argues that the circuit court erred in refusing to suspend execution of the judgment pending appeal.  Henderson claims he had a statutory right to a supersedeas bond, and that the circuit court erred in ignoring this right.

Ayres & Hartnett responds that a supersedeas bond was inappropriate.  Code § 8.01-676.1 prevents the execution of a judgment pending appeal.  Ayres & Hartnett asserts that in this

4

case, the funds had been paid into the court by the parties, and the dispute was over the distribution of the funds, not entry of a judgment. Thus, it claims that Code § 8.01-676.1 is not applicable.

"Because the issue before this Court is one of statutory interpretation, it is 'a pure question of law which we review de novo.'" Brown v. Commonwealth, 284 Va. 538, 542, 733 S.E.2d 638, 640 (2012) (quoting Kozmina v. Commonwealth, 281 Va. 347, 349, 706 S.E.2d 860, 862 (2011)). "[T]he plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." Meeks v. Commonwealth, 274 Va. 798, 802, 651 S.E.2d 637, 639 (2007) (quoting Commonwealth v. Zamani, 256 Va. 391, 395, 507 S.E.2d 608, 609 (1998)).

The plain language of Code § 8.01-676.1(C) governs our analysis. The statute states, in pertinent part:

> An appellant who wishes execution of the judgment or award from which an appeal is sought to be suspended during the appeal shall, subject to the provisions of subsection J, file an appeal bond or irrevocable letter of credit conditioned upon the performance or satisfaction of the judgment and payment of all damages incurred in consequence of such suspension, and . . . execution shall be suspended upon the filing of such security and the timely prosecution of such appeal.

Code § 8.01-676.1(C). The plain language of Code § 8.01-676.1(C) states that this section applies to judgments or

awards. Code § 8.01-669 defines judgment as including "a decree, order, finding, or award." The circuit court's order of disbursement of the proceeds from the sale of Wellington to Ayres & Hartnett was a judgment according to Code § 8.01-669. Consequently, Code § 8.01-676.1(C) applies to the ordered disbursement.

This Court has stated that "[t]he purpose of the statute is to secure payment of the full judgment amount and all damages incurred as a result of the suspension." Tauber v. Commonwealth, 263 Va. 520, 545, 562 S.E.2d 118, 131 (2002). "A lesser amount would undermine the security of the judgment to which a prevailing party is entitled in the event that an appellant does not succeed on appeal." Id. Additionally, this Court has held that a supersedeas bond "is one of indemnity, the object of which is to secure to a successful litigant the ultimate fruits of his recovery, in whole or in part, and to insure him against loss from the possible insolvency of his debtor, or from other cause, pending the appeal." National Surety Co. v. Commonwealth, 125 Va. 223, 228, 99 S.E. 657, 658 (1919).

In this case, the funds the court awarded to Ayres & Hartnett were being held by the court. Henderson requested that the court continue to hold the funds pending the appeal and set an appeal bond covering the damages that might be

6

incurred by Ayres & Hartnett because of the suspension, such as the loss of interest on the $130,000 and costs that might be assessed against Henderson. The circuit court declined to do so, ruling that Code § 8.01-676.1(C) was not applicable because the funds were held by the court, and ordered immediate disbursement of the funds. The circuit court erred in not setting a bond adequate to satisfy all damages resulting from suspending execution of the judgment as required by Code § 8.01-676.1(C).

Henderson also questions the authority of the circuit court to decide the attorney's fees issue because it was collateral to the underlying litigation. Henderson argues that the circuit court erred in determining that it had jurisdiction to resolve Ayres & Hartnett's fee dispute with its client because the subject matter of the estate litigation did not involve the dispute over Ayres & Hartnett's litigation fees. He asserts that the estate litigation created the proceeds deposited with the circuit court, that those funds belong to the estate litigants, and that Ayres & Hartnett has no claim to the funds.

"The resolution of this appeal is determined by . . . whether the trial court had jurisdiction to resolve [the attorney's fees] claim[] . . . . [This] inquir[y] present[s] questions of law which we review de novo." Country Vintner,

7

Inc. v. Louis Latour, Inc., 272 Va. 402, 410, 634 S.E.2d 745, 750 (2006) (citation omitted).

In Iron City Savings Bank v. Isaacsen, 158 Va. 609, 625, 164 S.E. 520, 525 (1932) (citations omitted), this Court stated:

> Where some phase of the case alleged in a bill in chancery presents a good ground for equitable relief, and the court has acquired actual jurisdiction of all the parties, or of the res, necessary for the granting of some of the equitable relief to which the allegations of the bill entitle the complainant, a court of chancery may go on to a complete adjudication of the cause, even to the extent of establishing legal rights and administering legal remedies, which would otherwise be beyond the scope of its authority. In each such case the court is vested with a sound discretion to determine upon the facts and circumstances of the particular case, whether it is better to relegate the parties to a court of law for the establishment of their legal rights and the administration of legal remedies, or to go on and end the litigation by giving complete relief in the chancery cause.

Further, "in [an equity] case [the court] will not send the parties back to a court of law, but will retain jurisdiction for all purposes, and do complete justice between the parties. This is true even where the proof may show that the complainant is not entitled to the equitable relief prayed." Shield v. Brown, 166 Va. 596, 601, 186 S.E. 33, 35 (1936).

It is undisputed that the circuit court had equity jurisdiction over the original trusts and estates cases. The parties in the trusts and estates cases, by agreement, paid the

8

disputed proceeds from the sale of Wellington, the res, into the circuit court for distribution by it.

The circuit court had jurisdiction over the attorney's fees litigation because an equity court may decide a collateral legal issue once it has the res necessary for the exercise of its jurisdiction. See Iron City Savings Bank, 158 Va. at 624-25, 164 S.E. at 525 ("The potential jurisdiction of a court of chancery, when properly invoked, is sufficient to sustain the exercise of the power of the court to do all things necessary or proper to perfect its actual jurisdiction and to preserve the status quo while so doing; as for instance, by granting a temporary injunction. But if the parties or res necessary to the exercise of the actual jurisdiction of the court to grant, at least, some of the equitable relief proper under the allegations of the bill are not subsequently brought under the jurisdiction of the court, the jurisdiction of the court of chancery [fails].").

As to the circuit court's ability to award part of the res held by the court to Ayres & Hartnett, Code § 54.1-3933 states that a circuit court may order

> any fee or compensation to counsel to be paid out of money . . . under the control of the court, [if] the claim is in the bill, petition, or other proceeding, of which the parties interested have due notice, or [if] the parties are notified in writing that application will be made to the court for such decree or order.

Here, the HUD-1 stated that attorney's fees purportedly owed by Henderson to Ayres & Hartnett would be deducted from Henderson's share of the proceeds from the sale of Wellington. It was agreed that the proceeds from the sale would be paid into circuit court. Henderson notified the court and Ayres & Hartnett that he was contesting the payment of attorney's fees to his counsel as stated in the HUD-1. Based on these facts, the circuit court did not err in ruling it had the power to determine the proper distribution of the proceeds deposited with the court, including the disputed amount allegedly owed as attorney's fees. See Code § 54.1-3933.

Henderson also argues that even if the circuit court had jurisdiction, it erred in overruling his request for a jury trial and in awarding judgment in favor of Ayres & Hartnett in the amount of $130,000.[1] The circuit court denied the request

---

[1] In his briefs filed with this Court, Henderson does not specifically address this argument regarding the amount of the award, and merely restates the assignment of error. Because "[t]he . . . general assignment[] of error [is] not independently argued on brief[,] we will not consider [it]." Lawlor v. Commonwealth, 285 Va. 187, 211, __ S.E.2d __, __ (2013) (citing Rule 5:27(d)). To the extent Henderson alleges that the amount of attorney's fees was not reasonable, there is sufficient evidence in the record to support the $130,000 judgment. See Nelson v. Davis, 262 Va. 230, 234, 546 S.E.2d 712, 715 (2001) ("A finding of the chancellor on conflicting evidence, heard ore tenus, carries the same weight as a jury's verdict and will not be disturbed on appeal unless it is plainly wrong or without evidence to support it.") (internal quotation marks and citation omitted).

because the original cases were in equity since they concerned trust and estate disputes as well as requests for accountings. In equity, a litigant has no constitutional right to a trial by jury. Wright v. Castles, 232 Va. 218, 222, 349 S.E.2d 125, 128 (1986); W.S. Forbes & Co. v. Southern Cotton Oil Co., 130 Va. 245, 263-64, 108 S.E. 15, 21 (1921). Despite the merger of law and equity procedure for civil cases, see Rule 3:1, there is no general right to a jury trial for suits in equity; the trial and decision of equity claims by the judge alone continues. Rule 3:21(a).

To obtain a jury trial in equity, one of two code provisions may be utilized. Code § 8.01-336(D) states: "In any action in which a plea [in equity] has been filed to an equitable claim, and the allegations of such plea are denied by the plaintiff, either party may have the issue tried by jury." Code § 8.01-336(E) states: "In any suit on an equitable claim, the court may, of its own motion or upon motion of any party, supported by such party's affidavit that the case will be rendered doubtful by conflicting evidence of another party, direct an issue to be tried before an advisory jury."

Henderson never filed a plea in equity entitling him to a jury trial. Further, neither the circuit court nor any of the parties ever moved for an advisory jury, rendering Code § 8.01-336(E) inapplicable. And while Rule 3:22(D) permits the court

11

to order a jury trial of any claim or issue where the parties consent, no such unanimous consent was obtained here.  No other provision giving a right to a jury is implicated here.[2]

The dispute over attorney's fees arose within the circuit court's equity jurisdiction over the original litigation, and the "decision of equitable claims [is] by the judge alone." Rule 3:21(a).  Thus, the circuit court did not err in overruling Henderson's jury trial request.

Conclusion

The circuit court erred in refusing Henderson's request to post an appeal bond and suspend the award pursuant to Code § 8.01-676.1.  However, the error is harmless because the circuit court's award to Ayres & Hartnett was proper.  Accordingly, for the reasons stated above, we will affirm the judgment of the circuit court.

Affirmed.

---

[2] See Code § 55-153 (jury trial in equitable action to quiet title); Code §§ 64.2-446(B), -448(C) (jury trial concerning authenticity of a will).